BOWEN, Judge.
J.D.S., the appellant, was convicted of the second degree rape and the second *1251 degree sodomy of his daughter. He was given a concurrent sentence of five years’ imprisonment in each case. The appellant raises four issues on this appeal from those convictions.
I.
At the appellant’s trial for four sex crimes against his daughter, evidence of the appellant’s sexual abuse of his stepson was properly admitted into evidence.
The appellant was charged in a four-count indictment with sodomy in the first degree “in the years of 1985 and/or 1986,” with sodomy in the second degree “in the years of 1987 and/or 1988 and/or 1989,” with rape in the second degree, and with incest. No dates were specified in the indictment for these last two offenses. However, in response to the appellant’s motion for a more definite statement, the prosecutor indicated that these last two offenses occurred in 1988 and 1989. Each offense involved the appellant’s daughter, who was ten years old in 1985.
Prior to trial, the prosecutor represented that he would introduce the testimony of the appellant’s sexual abuse of his stepdaughter and his stepson:
“[T]he state does intend putting testimony of M.C. [stepdaughter], and T.G. [stepson].
“Offer their testimony — Ms. C. and Mr. G. are stepchildren who lived with the defendant as a family for most of their childhood years. Ms. C. and Mr. G. both somewhat unwillingly have come to our attention and have stated that the defendant molested them while they were children, that the molestation was an ongoing molestation over a period of six months to up to two years with the male child. And that the molestation was similar to what we have before us in this case now as far as oral intercourse with — forcing oral intercourse on the— with the female, and also oral intercourse with the male child, both give and take.
“The time frame is about ten years ago. The female is ... 24 now, took place about ten years ago when she was 14. The male, Mr. G.’s testimony I expect to be that it was a little less then ten years ago. The molestation took place somewhere between eight and nine years ago.
“The state would offer this as, basically, as a common scheme, plan by the defendant that he has molested his own children in the past and he has done so in this case also, that that common scheme or plan would be apparent and it would be one way it would be admissible testimony.
“I think based on the fact that they were children, his children, living in his household, and was an ongoing abuse would be sufficient reason that it is relevant and should be presented.”
Relying on Ex parte Cofer, 440 So.2d 1121 (Ala.1983), defense counsel argued that the alleged abuse of the appellant’s stepchildren “occurred ten years ago [and] it was too remote in time to be relevant in the current case.” Defense counsel also argued that “the allegation is different in kind than the charge before the Court. Therefore, that would be an additional ground to — that it not be admissible based on relevancy.”
The trial court denied the appellant’s pretrial motion in limine which sought to suppress this testimony with the following comments:
“From the Court’s reading of Ex parte Cofer, it appears that the real turning point in that case was the fact that the state presented evidence of prior sexual misconduct but of a different type from that with which the defendant was actually tried in the case on appeal. There was an offer of evidence of a rape on a first cousin some ten years prior to trial. He was being tried currently for a sex abuse charge.
“My understanding of the proffered evidence by the state in this particular case, State versus [S]., would be of the same type of sexual misconduct; that is, *1252 acts of fellatio, forcing children under 16 years of age to commit acts of fellatio upon the defendant.
“The Court finds that to be testimony which well would fit within the exception to the rule of evidence that would prohibit evidence of other criminal activity, that this would show apparent common plan or scheme on the part of the defendant in having young children within his home victimized by forcing or compelling them in some way to commit deviate sexual conduct or activity upon him.
“And the Court finds the Cofer case not to be a hard and fast rule that there’s some specific cut-off date at ten years. And the Court thinks that that would depend on a case by case analysis by the trial court.
“Again, we’re dealing with a type of activity that many times goes unreported or is reported many times much later than the actual occurrence of the event for any number of reasons.
“And for those reasons, the Court denies the motion in limine as to that aspect.”
At trial, the State proved on direct examination of the victim that the appellant first started “touching” and “rubbing” his daughter’s “breasts and [her] private spot” in 1986, that the appellant’s daughter performed fellatio on the appellant at the appellant’s insistence during the years 1985, 1986, and 1989; that this fellatio occurred “whenever he had a chance ... which was probably every two weeks”; that the appellant first had sexual intercourse with his daughter on September 10, 1988; and that the appellant also had intercourse with his daughter on October 24, 1988, and on June 24, 1989. On cross-examination, the victim testified that the first act of fellatio occurred in 1986.
After the victim testified, defense counsel renewed his motion in limine and argued that “even the span of eight to nine years on the stepson would be inadmissible not only because of the time span, but because of the different nature of the charge, one involving a stepson and the other a natural daughter.”
Immediately before the stepson testified, the prosecutor informed the trial court of the following:
“The male stepchild has indicated to me that he did not — was not forced to commit oral sex with the defendant, although the defendant did force himself upon him and commit the act on him. Just to make sure I’m in the area of the Court’s ruling if that is not the exact same act, but it is the same sexual category.
“THE COURT: It falls in that category of deviate sexual intercourse.
“MR. HARMON [defense counsel]: ... This is clearly a different act because of the difference in the alleged acts as well as the remoteness of time. I think that under that case [Cofer] this testimony would be inadmissible.
“THE COURT: Overrule the objection.”
The prosecutor then presented the testimony of T.G., the appellant’s 23-year-old stepson. T.G. testified that the appellant, “on quite a few occurrences, quite a few times,” touched him in a way that made him feel uncomfortable. When asked to describe the touching, he stated that “it was like” early one morning, he was awakened by the appellant performing fellatio on him. These acts of sexual abuse occurred sometime during the time when he was 13-15 years old. From T.G.’s testimony, we conclude that the apparently ongoing sexual abuse of T.G. occurred during the years 1980-1982. The appellant’s stepdaughter did not testify at trial.
Ex parte Cofer, 440 So.2d 1121 (Ala.1983), involved a prosecution of a defendant for the sexual abuse of his 16-year-old sister-in-law. In order to prove a common scheme, the State introduced testimony that the defendant had raped his first cousin approximately ten years before the date of the charged offense. The Alabama Supreme Court held:
*1253 “We hold that a single rape which occurred ten years prior to the present offense, as reprehensible as it is, is not evidence of a pattern or pre-existing design into which the present charge of sexual abuse fits. See Brasher v. State, 249 Ala. 96, 98-100, 30 So.2d 31, 32-34 (1947).
“Additionally, the prior rape was alleged to have occurred ten years before the present offense. Even if intent were in issue, this prior rape is too remote to be probative of the issue. Deason v. State, 363 So.2d 1001, 1005 (Ala.1978). In Deason, we were concerned with the proximity of an act subsequent to the one charged, but our admonition there that the acts be not too remote in time is applicable here.”
Cofer, 440 So.2d at 1124. See also Butler v. State, 500 So.2d 470, 471-72 (Ala.Cr.App.1986) (in a prosecution for the sexual abuse of his stepson, evidence that the father sexually abused one of his daughters 12 to 13 years ago was too remote to show a pattern or intent); McClellan v. State, 571 So.2d 341, 344 (Ala.Cr.App.), writ quashed, 571 So.2d 345 (Ala.1990) (in a prosecution for sexual abuse of a stepdaughter, evidence that the father sexually abused a child, a cousin of the victim’s mother, eight years before the charged offense was far too remote to satisfy the requisite test of relevancy).
“[I]t is generally agreed that ... the evidence of other crimes must be so related in time, place, and circumstance to the charged offense so as to have substantial probative value in determining the guilt of the accused.” Annot., 2 A.L.R.4th 330, 337 (1980) (footnote omitted).
“[T]he test of relevancy ... is a prerequisite to admissibility under each of the exceptions [to the general rule against admissibility of prior offenses]. Ex parte Killough, 438 So.2d 333 (Ala.1983)....
“Evidence that the defendant committed two drug-related offenses more than 10 years before the subject charge [of the unlawful possession of marijuana] is far too remote to satisfy the requisite test of relevancy.”
Ex parte Tomlin, 548 So.2d 1341, 1343 (Ala.1989).
Apparently, the appellant’s argument on appeal that the evidence of the appellant’s homosexual act with T.G. was not admissible because it was too remote is based on the pretrial assertions of the prosecutor as to his expectations of the stepson’s testimony. However, the stepson did not testify exactly as expected as can be determined from our brief summary of his testimony.
The State’s evidence of the appellant’s sexual abuse of the victim involved the years 1985-1989. Although the inference from the victim’s testimony is that the fellatio occurred on a continual and sustained basis during those years, she specifically testified that she performed fellatio on the appellant at his insistence in the years 1985, 1986, and 1989. The collateral offense testimony of the stepson involved the years 1980-1982. Therefore, the incidents with the stepson occurred anywhere from a minimum of three years to a maximum of nine years from the time of the incidents with the victim. Under these circumstances, we find that the sexual abuse of the stepson was not too chronologically remote to the charged offenses.
Furthermore, the evidence of the sexual abuse of the stepson was relevant to prove the appellant’s motive in sexually abusing his daughter.
In Bowden v. State, 538 So.2d 1226 (Ala.1988), the Alabama Supreme Court indicated that where a defendant is charged with the offense of incest, “evidence establishing that the accused raped and/or sexually abused one or more of his other children is admissible to prove his motive in raping the victim, also his child.” Bowden, 538 So.2d at 1235 (emphasis in original).
“Motive is defined as ‘an inducement, or that which leads or tempts the mind to do or commit the crime charged.’ Spicer *1254 v. State, 188 Ala. 9, 11, 65 So. 972, 977 (1914). Motive has also been described as ‘that state of mind which works to “supply the reason that nudges the will and prods the mind to indulge the criminal intent.” ’ [C.] Gamble, Character Evidence[: A Comprehensive Approach 42 (1987)].
“Furthermore, testimony offered for the purpose of showing motive is always admissible. McClendon v. State, 243 Ala. 218, 8 So.2d 883 (1942). Accord, Donahoo v. State, 505 So.2d 1067 (Ala.Crim.App.1986). ‘ “It is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense.” McAdory v. State, 62 Ala. 154.’ Nickerson v. State, 205 Ala. 684, 685, 88 So. 905, 907 (1921).
“Thus, where, as in these cases, a defendant is charged with the first degree rape of his minor daughter, evidence establishing that he had raped and/or committed acts of sexual abuse toward her prior to or subsequent to the offense for which he is charged, is admissible to prove his motive in committing the charged offense. Such evidence tends to establish the inducement (i.e., unnatural sexual passion for his child) that led him to rape or molest her.
“However, where the defendant is not charged with the offense of incest, ... it becomes questionable whether evidence establishing that the accused raped and/or sexually abused one or more of his other children is admissible to prove his motive in raping the victim, also his child.
“We now hold as follows: It may well be, when the third party against whom the defendant is claimed to have committed a collateral sexual offense is the defendant’s child, that collateral offense evidence is more relevant in proving the material ‘other purpose(s)’ for which it is offered in a sex crime prosecution than would be evidence of other third party offenses. This of course depends upon (1) the offense(s) charged; (2) the circumstances surrounding the offense(s) charged and the collateral offense(s); (3) the other collateral evidence offered at trial, and (4) the other purpose(s) for which it is offered. Thus, as previously noted, the analysis must be case by case.”
Bowden, 538 So.2d at 1235, 1237-38 (emphasis in Bowden). In his separate opinion, Justice Maddox, concurring in part and dissenting in part, observed: “Here, the majority seems to summarily dismiss motive as a viable exception to the general exclusionary rule ‘where the defendant is not charged with the offense of incest.... Why the extra charge of incest is necessary to allow motive to be shown puzzles me_”). Bowden, 538 So.2d at 1239 (emphasis in original).
In Hill v. State, 538 So.2d 436 (Ala.Cr.App.), cert. denied, 538 So.2d 439 (Ala.1988), this Court held that in a prosecution for sexual abuse in the second degree involving the appellant’s daughter, “[e]vi-dence of homosexual tendencies of appellant [with his minor son] five or six years before the incident of pinching his [minor] daughter is not evidence of a plan, scheme, intent, or design to commit sexual abuse in the second degree upon the daughter.” Hill, 538 So.2d at 438. That case is distinguishable because it did not involve a charge of incest. See also Parris v. State, 43 Ala.App. 351, 353, 190 So.2d 564, 565 (1966) (In a prosecution of sodomy of daughter where the evidence showed that the defendant placed his mouth upon the sex organ of his 15-year-old daughter, evidence that the defendant attempted to commit the act of cunnilingus with his wife “could have no value except to show his sex depravity and his disposition, inclination, or propensity to commit such sex act” and was inadmissible.).
We deem it insignificant that the collateral offense evidence in this case involved a male while the charged offense involved a female, and that one involved the appel *1255 lant’s stepson and the other involved the appellant’s natural daughter. The offense of incest can be committed upon a stepchild. Ala.Code 1975, § 13A-13-3(a)(3).
Furthermore, while it is a consideration, it is not significant in this case that the appellant allegedly performed fellatio on his stepson but had his daughter perform fellatio on him. Fellatio constitutes deviate sexual intercourse which is defined in § 13A-6-60(2) and is condemned as sodomy. § 13A-6-63 and § 13A-6-64. Neither of the sodomy statutes makes any reference to or distinction between the different roles of the participants in the act of deviate sexual intercourse.
In addition to finding that the evidence of the collateral offense was relevant on the appellant’s motive, we also find that the prejudicial effect of that collateral offense evidence did not outweigh its probative value. “[EJven if the proffered evidence fits within an exception to the general exclusionary rule, its probative value must outweigh its prejudicial effect for the evidence to be admissible.” Ex parte Smith, 581 So.2d 531 (Ala.1991).
In this case, there was no physical evidence of abuse. The guilt or innocence of the appellant hung solely on the testimony of his daughter. She supplied the only direct testimony that the appellant sexually abused her. That daughter’s testimony was suspect. She testified that during this period of time she was drinking beer and smoking marijuana “every weekend.” She was not “getting along with her mom,” and was a discipline problem. She wanted her father, the appellant, to “break up” with her stepmother. Her natural mother committed her to a mental care facility. The daughter admitted telling her grandmother that she was going to say that the allegations against the appellant were not true and that she told her mother that the allegations were not true. There was evidence that the victim’s mother and the appellant were involved in a dispute “over some alimony in a property settlement.” The victim testified that she initiated approximately half of her visits with the appellant when she was living with her mother after her parents’ divorce. The victim remembered specific dates at trial that she had been unable to recall previously. Obviously, there was a genuine need by the prosecution to corroborate and substantiate the testimony of the victim. See Smith, supra (“reasonably necessary to the government’s case”).
In contrast to the victim’s graphic testimony, the testimony of the stepson paled. His testimony was brief, and he related only one specific incident of fellatio while referring generally to touching by the appellant which made him feel uncomfortable. We do not doubt that his testimony was prejudicial to the appellant. However, we find that, within the context of the entire case, it was not unduly prejudicial in that the prejudicial nature of the stepson’s testimony did not outweigh its probative value.
While we do not hold that the admission of the stepson’s testimony was harmless error, we do make the observation that before the stepson testified, the victim testified, without objection, that when she first disclosed that she was being sexually abused by the appellant, she and her stepmother “were sitting in the kitchen and we were talking. And I told her, I said, ‘Remember what happened to my brother?’ And she said, ‘Yeah,’ And I told her, I said, ‘Well, the same thing happened to me.’ ”
After finding that the testimony of the stepson is relevant, that it served a legitimate purpose, and that it is not unduly prejudicial, we conclude that the stepson’s testimony was properly admitted into evidence on the issue of the appellant’s motive in sexually abusing his daughter,
II.
The appellant argues that the trial court erred in not requiring the State to elect a specific offense to support each count of the indictment.
We need only consider this argument as it relates to Counts II and III of *1256 the indictment. At the close of the State’s case, the trial court granted the appellant’s motion for a judgment of acquittal on Count IV charging incest because the State had failed to corroborate the testimony of the victim as required by Ala.Code 1975, § 13A-13-3(b). The jury found the appellant not guilty of first degree sodomy as charged in Count I of the indictment. Questions relative to a count of the indictment upon which there was an acquittal are “innocuous,” Oakley v. State, 135 Ala. 29, 34, 33 So. 693, 694 (1903), and will not be considered on appeal. Gresham v. State, 20 Ala.App. 187, 101 So. 909, 910, cert. denied, 212 Ala. 190, 101 So. 910 (1924). Therefore, we consider the issue of election only with regard to Counts II and III of the indictment.
The need for election arises where there is but one count charging a single offense, but the proof shows more than one instance of that offense. The cases of Deason v. State, 363 So.2d 1001 (Ala.1978), and Reed v. State, 512 So.2d 804 (Ala.Cr.App.1987), stand for the proposition that when the State has charged the accused with one offense in one count of the indictment, but has presented evidence that the accused committed that offense several times on several different dates, the State, upon proper motion, is required to elect the date of the offense on which it seeks a conviction.
In this case, the trial court did require the State to make an election as to each count of the indictment. With regard to Counts II and III, the trial court stated that election as follows:
“[Yjou’re electing under Count II a charge of sodomy in the second degree, an incident of alleged fellatio committed by the defendant on [the victim], occurred when she was 13 years old in 1988 in DeArmanville, Calhoun County, Alabama, when the victim ... was residing in DeArmanville in a household with the defendant and with the victim’s stepmother; ...”
“Count III, rape second, the sexual intercourse in September of 1988.... ”
In regard to Count III, the prosecutor stated that that count “would also be limited to the DeArmanville area in 1988 when the victim resided with the defendant and his current wife, the victim’s step-mother.”
The trial court charged the jury on these elections in his oral instructions.
These elections were sufficient, under the circumstances of this case, to satisfy the doctrine of election.
“The election between acts should be such as to fix definitely the transaction relied on, but its sufficiency to some extent at least is discretionary with the trial court.
“It is enough that it be as definite as is possible from the evidence where, from the information, the evidence, and the election, accused is informed as to the transaction, or the jury could not be misled as to the particular charge submitted to them.”
23A C.J.S. Criminal Law § 1214(d) (1989) (footnotes omitted).
III.
The appellant argues that the trial court committed reversible error in permitting, over objection and in the presence of the jury, the appellant’s wife to invoke her right not to testify against the appellant.
In Terry v. State, 540 So.2d 782, 783-84 (Ala.Cr.App.1988), cert. denied, 540 So.2d 785 (Ala.1989), this Court indicated that the “preferred rule” and “the better rule and practice” is that where the prosecutor has reason to believe that a spouse will elect not to testify against the spouse-defendant, the prosecutor should ask for a hearing outside the presence of the jury in order to determine, before calling the witness to testify before the jury, whether the witness intends to make that election. However, in that opinion, this Court noted that, traditionally, the courts of this state have not treated a violation of that “preferred rule” *1257 as error. In Wyatt v. State, 35 Ala.App. 147, 154, 46 So.2d 837, 843, cert. denied, 254 Ala. 74, 46 So.2d 847 (1950), the court “doubt[ed]” that any merit ever attached to the objection advanced by the appellant to the procedure followed. In Williams v. State, 420 So.2d 819, 820-21 (Ala.Cr.App.1982), this Court, citing Wyatt, specifically held that the trial judge did not commit reversible error in refusing to allow the defendant’s wife to invoke her right not to testify against her husband outside the presence and hearing of the jury. In Hopkins v. State, 429 So.2d 1146, 1153 (Ala.Cr.App.1983), this Court again followed Wyatt and held that there was no error in calling the wife to testify in the presence of the jury against the husband-defendant even though there was reason to believe that the wife would elect not to testify and even though proper objection to the procedure had been made. See also Thomas v. State, 473 So.2d 627, 630 (Ala.Cr.App.1985).
With regard to the privilege against self-incrimination, the “correct” rule is that “a witness, other than the defendant himself, cannot refuse to take the stand and testify by ‘taking the Fifth.’ A witness may only invoke his Fifth Amendment privilege against self-incrimination after he has been sworn and asked a question which would elicit incriminating evidence if answered by such witness.” Reeves v. State, 463 So.2d 174, 176 (Ala.Cr.App.), reversed on other grounds, 463 So.2d 177, 178 (Ala.1984). See also Smith v. State, 457 So.2d 997, 999 (Ala.Cr.App.1984). To the extent that a contrary rule is expressed in Terry v. State, 540 So.2d 782, 783-84 (Ala.Cr.App.1988), cert. denied, 540 So.2d 785 (Ala.1989), it is expressly overruled.
However, there is a distinction between the competency of a witness and the privilege a competent witness may have.
“The terms ‘competency’ and ‘privilege’ are often used to refer to the same evidentiary question. They are, however, quite different and one has to be very careful in avoiding the confusion that has surrounded these terms. Competency deals with the question of whether a spouse can take the stand at all against the other spouse. Privilege, on the other hand, deals with whether the witness spouse, after having taken the stand as a competent witness, may testify to certain confidential communications made to him by the communicating spouse.”
C. Gamble, McElroy’s Alabama Evidence § 103.01(1) (3d ed. 1977).
In Alabama, “[t]he spouse is incompetent as a witness until [a] voluntary election to testify is made and the right not to testify waived.” Arnold v. State, 353 So.2d 524, 526 (Ala.1977). “[A] spouse becomes a competent witness only after electing to testify.” Ex parte Billingsley, 402 So.2d 1060, 1061 (Ala.1981), cert. denied, 465 U.S. 1023, 104 S.Ct. 1276, 79 L.Ed.2d 681 (1984). “Defendant’s wife, not having elected to testify, was an incompetent witness. Thus, it was error to allow the prosecutor to draw an adverse inference from defendant’s failure to call her.” Billingsley, 402 So.2d at 1061. “The question of the competency of a witness is for the court to decide.” Metropolitan Life Insurance Co. v. James, 228 Ala. 383, 393, 153 So. 759, 767 (1934). Because of the distinction between privilege and competency, this Court maintains that the better rule is that a spouse should be permitted to make an election of whether or not to testify outside of the presence of the jury.
However, where there is no indication that the prosecutor attempted to draw any adverse inference from or attempted to capitalize upon the spouse’s invocation of her right not to testify, and where there is no indication that the appellant was prejudiced by the procedure, we hold, in line with the authorities of the past, that no error is committed in requiring the spouse to make an election of whether or not to testify in the presence and hearing of the jury. Accordingly, we find no error in the procedure followed in this case.
IV.
The appellant contends that the trial court erred in refusing to instruct the *1258 jury on the offense of sexual abuse as a lesser included offense. Contrary to the argument of the appellee, an oral request for an instruction is sufficient to preserve for appellate review the issue of the trial court’s refusal to give the requested instruction where there is no indication in the record that the trial court required that any requested instruction be submitted in writing. Davenport v. City of Birmingham, 570 So.2d 1298, 1299 (Ala.Cr.App.1990).
The offense of sexual abuse may constitute a lesser included offense of either rape or sodomy. See Hutcherson v. State, 441 So.2d 1048, 1052 (Ala.Cr.App.1983). However, in determining whether one offense is a lesser included offense of another, a court must consider both the potential relationship of the statutes defining the offenses in abstract terms and the facts of the particular case. Ex parte Jordan, 486 So.2d 485, 488 (Ala.1986).
Here, there was evidence that the appellant was guilty of sexual abuse not instead of, but in addition to the offenses of rape and sodomy. Under all of the evidence presented to the jury, the appellant was either guilty of the offenses charged or he was innocent of the crimes charged in the indictment. Cf. Ex parte Ainsworth, 501 So.2d 1269, 1270 (Ala.1986) (defense counsel has the right to argue that the defendant is guilty of a criminal offense not charged in the indictment and not a lesser included offense of any charged offense).
The appellant testified in his own defense and claimed that he never had any unlawful sexual contact with his daughter and also presented a defense of alibi. The fact that the victim testified to facts showing that the appellant was guilty of sexual abuse and rape and sodomy does not entitle the appellant to a charge on sexual abuse as a lesser included offense of rape and sodomy. The evidence in this case shows either that the appellant committed the offenses charged and, in addition, committed the separate, distinct, and uncharged offense of sexual abuse, or that he was innocent. There is no reasonable theory from all or any part of the evidence which would support a finding that the appellant was not guilty of rape and sodomy but was guilty of sexual abuse as a lesser included offense of those offenses.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.